**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION**

| | | |
|---|---|---|
| PENNINGTON SEED, INC. | ) | **ORIGINAL** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| THE SCOTTS MIRACLE-GRO COMPANY, INC. and | ) | **BBM** |
| | ) | |
| THE SCOTTS COMPANY LLC, | ) | **1:09-CV-0903** |
| | ) | **TRIAL BY JURY DEMANDED** |
| Defendants. | ) | |

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

APR 03 2009

JAMES N. HATTEN, Clerk
By: Deputy Clerk

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Comes now Plaintiff, Pennington Seed, Inc. ("Plaintiff" or "Pennington"), by its undersigned attorneys and complains against Defendants The Scotts Miracle-Gro Company, Inc. and The Scotts Company LLC (collectively, "Defendants" or "Scotts"), as follows:

## NATURE OF THE CASE

1.     This is an action to obtain injunctive relief and damages for violations of the unfair competition and false advertising provisions of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. § 10-1-370 et seq., the Georgia False Advertising Law Ga. Code Ann. § 10-1-420 et seq., and the Georgia common law

1

of unfair competition.  Scotts is currently airing a television commercial (the

"Commercial") containing numerous false and misleading claims about the

products of Pennington, its direct competitor.  Scotts is airing the Commercial

during the prime sales season for grass seed in order to gain an unfair advantage

and to create the maximum amount of harm to Pennington.  As a direct result of

Scotts' false and misleading claims, Pennington has suffered, and will continue to

suffer substantial and irreparable harm.  Unless Scotts' unfair methods of

competition and false and deceptive practices are enjoined, Pennington will

continue to lose sales of its grass seed products, its reputation will continue to be

damaged and its profitability will be severely impaired.

      2.     The commercial is false and misleading because it represents

that Scotts' advertised product is: superior to Pennington's products in color;

superior to Pennington's products in thickness; and superior to Pennington's

products in its ability to withstand infrequent watering.  Additionally, the

commercial falsely and deceptively compares Scotts' highest quality grass seed

product, specifically designed to withstand infrequent watering, to Pennington's

low-end, economical product rather than Pennington's most comparable product,

which also can withstand infrequent watering and produces grass at least as thick

and green, if not thicker and greener, than the Scotts product.  The commercial also

falsely represents that: Pennington does not offer a grass seed product with resistance to infrequent watering and thus one that is comparable to the Scotts product advertised, even though Pennington offers numerous grass seed products that can withstand infrequent watering and still produce a thick, green lawn; and that if consumers use Pennington grass seed and fail to water their lawn every day, their grass seed will dry out and die.

        3.      Further, the commercial is false and misleading because it depicts grass grown with the advertised Scotts grass seed and grass grown with Pennington grass seed and represents that the difference in the color of grasses resulted from the purported water-retaining qualities of the Scotts product. However, the grass grown from Pennington grass seed is a completely different type of grass than that grown from the Scotts product, has an entirely different genetic background and is of a different quality. The difference in the color of the grasses is due to these differences and has nothing to do with any water-retaining qualities of the Scotts product advertised. Moreover, the commercial falsely represents that a special coating on the Scotts product provides a resistance to infrequent watering during the entire life of the grass, when in fact any benefit provided by this coating would exist only during the seeds' germination period.

## THE PARTIES

4.     Plaintiff Pennington is a Delaware Corporation with its principal place of business located in Madison, Georgia.

5.     Scotts Miracle-Gro Company, Inc. (NYSE: SMG) is incorporated in Delaware and has its principal place of business in Marysville, Ohio.

6.     The Scotts Company LLC is an Ohio Limited Liability Company, with its principal place of business at 14111 Scottslawn Road, Marysville, Ohio.  The Scotts Company LLC is a wholly owned subsidiary of Scotts Miracle-Gro Company, Inc.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under the Lanham Act, 15 U.S.C. § 1125(a) *et seq.*, and 28 U.S.C. § 1331, 28 U.S.C. § 1338(b) and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

8.     This Court has venue over this matter based on 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

9.     This Court has personal jurisdiction over the Defendants because this action arises out of the transaction of business, commission of tortious injury, and other activities committed by Defendants within this District and elsewhere.

## PLAINTIFF AND ITS PRODUCTS

10.     Plaintiff, Pennington Seed, is the largest producer and marketer of grass seed in the world.  Pennington is also one of the largest manufacturers and distributors of lawn, garden and turf care products in the world, with state-of-the-art manufacturing facilities, observation nurseries and quality control labs located across the country, including in Georgia.  It currently has more than 800 employees and over 16,000 dealers worldwide.

11.     Plaintiff Pennington produces, markets and sells over one hundred and fifty (150) different grass seed products at various levels of quality and price, which are designed for use in various climactic conditions such as extreme heat, cold, precipitation, and drought, sun, and shade, as well as for a variety of specific purposes, such as forage, wildlife, and turf designed specifically for different types of professional sports.

12.     One of these grass products is Pennington's Smart Seed® ("Smart Seed"), which is its premium line of grass seed designed for low water

conditions. Smart Seed® combines carefully selected varieties of grass with its MYCO Advantage™ special seed enhancement technology to produce a grass seed with resistance to infrequent watering, that requires up to 30% less water than standard grass seed. The result is a healthier, thicker lawn that utilizes available nutrients and fertilizer more efficiently, even when the lawn is watered infrequently. In fact, Smart Seed's® water-saving ability and drought-resistant qualities are so advanced, it has obtained Water Star™ qualification.[1]

13.     At the other end of the spectrum, Pennington sells Kentucky 31 Tall Fescue. Kentucky 31 Tall Fescue is a single-variety, commodity-grade grass seed product, which is marketed for general usage and sold at a lower price point. It is not specially designed for specific climactic conditions or resistance to infrequent watering. Kentucky 31 Tall Fescue naturally has a significantly lighter green color than all of Pennington's other grass seed products. This difference in color is due to genetic characteristics, and is unrelated to the frequency with which it is watered. Kentucky 31 Tall Fescue is typically purchased by consumers who are either seeking a lighter-colored grass or who do not wish to pay the additional

---

[1] Water Star™ program is designed to recognize plants and other live products in the lawn and garden industry that provide a clear benefit in water conservation. Products that become Water Star™ qualified will have successfully met a stringent set of criteria. Therefore, consumers will be assured that any product with the Water Star™ qualified seal provides true water conservation benefits

cost for a darker lawn. Kentucky 31 Tall Fescue is not unique to Pennington and is in fact sold by many grass seed companies.

## DEFENDANTS AND THEIR FALSE AND MISLEADING COMMERCIAL

14.     Scotts is the world's largest marketer of branded consumer lawn and garden products.

15.     Scotts sells a variety of grass seed products of different quality and price, and designed for different climactic conditions, in direct competition with Plaintiff.

16.     Scotts' Turf Builder® product line is its highest-quality grass seed ("Turf Builder"). In fact, Scotts describes Turf Builder as its "best grass seed" in the Commercial. Scotts claims Turf Builder has a special coating to achieve a resistance to infrequent watering like Pennington's Smart Seed®.

17.     Pennington's Smart Seed® products and Scotts' Turf Builder product both come in bags that contain directions from the manufacturer about how to seed land. Based on these directions, a bag of Scotts' Turf Builder and a bag of Pennington's Smart Seed® product that are the same weight are intended to seed the same amount of land. However, only approximately half of the bag of Turf Builder consists of grass seed, while the other half consists of inert material, whereas the Pennington Smart Seed bag contains 95-98% grass seed. In other

7

words, Scotts' Turf Builder product has approximately half the amount of grass

seed that Pennington's Smart Seed product contains.

18.    Scotts also markets commodity-grade grass seed products for

general usage, which, like Kentucky 31 Tall Fescue, are not designed for specific

climactic conditions, uses, or resistance to infrequent watering.

19.    As early as March 11, 2009, Defendants began airing the

Commercial, which shows several people who state that they are "grass seed

failures" because they forget to water their lawns, which results in the seed drying

out and dying.  The Commercial then introduces the Turf Builder seed, which

Scotts describes as its "best grass seed" and shows a picture of the Turf Builder

packaging.



The Commercial states that the Turf Builder grass seed "is wrapped in a super

absorbent coating that actually holds water to keep the seed moist" and shows a

computer-generated depiction of the coated seeds.



The commercial then shows a man holding two patches of grass – one labeled "Scotts" and one labeled "Pennington." The patch labeled "Scotts" looks greener, thicker and lush, whereas the patch labeled "Pennington" looks yellowish-green and sparse.



The man then says: "the Scotts looks greener and thicker, looks beautiful, it's lush."

        20.    For less than three seconds during the side by side comparison,

tiny, unreadable text appears at the bottom of the screen that says: "Grown with

KY31 seed variety found in Pennington KY31." The text is extremely small and

fuzzy, possibly intentionally so. The text is also in white, set against a white and

light blue background making it virtually impossible to read.  Furthermore, even in

the unlikely event that a consumer could read the text, it contained technical

language including "KY31," which not even the most sophisticated consumer

would understand.

      21.    The commercial concludes with the man again holding up the

two patches of grass and saying "that's the Scotts advantage."



*See* **Ex. A**, attached hereto, a true and correct copy of a story board of the

Commercial, and **Ex. B**, attached hereto, a true and correct copy of the

Commercial as it appeared on television.

      22.    The Commercial is false and misleading because it falsely

claims, both literally and impliedly, that Scotts Turf Builder is superior to

Pennington's products.  It is literally false because it shows both a visual depiction

and statements by consumers that Scotts grass is greener and thicker than Pennington grass and has a superior ability to withstand infrequent watering. It is impliedly false because it falsely implies that Pennington does not sell a product that is resistant to infrequent watering, that the difference in the color of the grass samples shown is due to water-retaining benefits of the coating on Scotts Turf Builder rather than genetic differences in the varieties of grass used, and that Turf Builder provides a water-retaining and drought resistant benefit to mature grass.

      23.    The statement of the consumers in the commercial that Scotts' grass "looks greener" is false and misleading because it represents that Defendants' Turf Builder grass seed produces grass that is greener than Pennington's grass seed products. This is false and misleading because Plaintiff produces a large variety of grass seed products, including its Smart Seed®, that produce grass that is at least as green as grass grown from Scotts' seed, if not greener. This is confirmed by tests performed by the National Turfgrass Evaluation Program, which is funded by the turfgrass industry and managed by the USDA, and is one of the most widely-known turfgrass research programs in the world. Tests performed by Pennington also demonstrate that grass grown from Pennington's Smart Seed® is as green, if not greener than grass grown from Scotts' Turf builder seed.

**Pennington Smart Seed**     **Scotts' Turf Builder**



Trays of Pennington Smart Seed and Scotts' Turf Builder grown
under the same conditions

24.     The statement of the consumer in the commercial that Scotts'

grass "looks thicker" is false and misleading because it represents that Defendants'

Turf Builder grass seed produces grass that is thicker than Pennington's grass seed

products.  This is false and misleading because Plaintiff produces a large variety of

grass seed products, including its Smart Seed®, which produces grass that is at

least as thick as grass grown from Scotts' seed, if not thicker, which is confirmed

by testing performed by the National Turfgrass Evaluation Program.  Furthermore,

since Scotts' Turf Builder product contains only approximately 50% active grass

seed, due to the presence of 50% powdered limestone used by Scott's as an inert

coating material, while many of Pennington's grass seed products, including Smart

Seed® are composed of 95-98% active grass seed, Scotts Turf Builder actually

produces *less* thick grass per area than Pennington's comparable products.



**Pennington Smart Seed**

**Scotts' Turf Builder**

Trays of Pennington Smart Seed and Scotts' Turf Builder grown
under the same conditions

25. The commercial's side-by-side comparison of grass labeled

"Scotts" and grass labeled "Pennington" is false and misleading because it

compares Scotts' highest quality grass seed product, specifically designed to

withstand infrequent watering, to Pennington's low-end product, rather than

Pennington's most comparable product, which also can withstand infrequent

watering, and produces grass at least as thick and green, if not thicker and greener than the Scotts product under infrequent watering conditions.

**Scotts' Best Grass Seed**          **Pennington's Low-end Grass Seed**



In so doing, Scotts makes the false and misleading claim of superiority over Pennington by implying that Pennington does not offer a comparable product.

      26.    The Commercial is false and misleading because it falsely represents that Pennington does not also offer a grass seed product that can withstand infrequent watering. The Commercial depicts consumers lamenting that when they forget to water their grass seed for a day, the seed dries out and dies.

The Commercial then explains that Scotts' Turf Builder now solves this problem with its seed coating that absorbs and retains water, which it describes as "the Scotts advantage," creating the false impression that Pennington does not have a product that can withstand infrequent watering. This representation is a false and misleading superiority claim because Plaintiff does offer a variety of grass seed products that can withstand infrequent watering, including its Smart Seed® product, which requires up to 30% less water than standard grass seed.

**Scotts' Best Grass Seed**          **Pennington's Comparable Product**



27.    The Commercial falsely represents that consumers who buy Pennington grass seed and miss a day of watering will experience "grass seed failures" and their grass seed will dry up and die.   The Commercial depicts consumers stating that because they forgot to water their grass seed the seed dried out and died, and then shows a patch of grass labeled "Pennington" that is yellowish-green and thinner than a patch of grass labeled "Scotts," which is greener, thicker, and lush.   This



representation is a false and misleading superiority claim because Pennington offers a variety of grass seed products that can survive a day without watering, including its Smart Seed product which requires up to 30% less water to maintain a thick, green lawn.   Furthermore, since the operating climactic and soil conditions play a major role in determining whether grass seed can withstand a day without watering, regardless of the quality or water-retaining benefits of the grass seed

product used, under certain conditions, many grass seed product can withstand a day without watering.

      28.    The Commercial is false and misleading because it represents that the difference in color between the grass grown from the Scotts and Pennington products depicted is a result of the Scotts product's purported water-retaining benefit.



However, the difference in color between the grasses shown stems from the comparison of *two different varieties* of grass, which have completely different genetic backgrounds and quality levels, and this difference would still exist <u>even</u> if both of the grass seed products were watered regularly.

      29.    The Commercial is also false and misleading because it represents that Scotts Turf Builder will protect a consumer's grass from infrequent watering during the life of the grass. After Scotts touts in the commercial that its TurfBuilder product contains a seed with a "super-absorbent coat" to keep the seed

moist, a "consumer" holds up two patches of mature grass side-by-side, one labeled "Pennington" and one labeled "Scotts," and states that "the Scotts looks greener and thicker, it looks beautiful, it's lush."



However, any water-retaining benefit that the seeds in Scotts' Turf Builder product provide is limited to a short germination period, or the period from when the seeds are planted to when they sprout seedlings.  For the Turf Builder product, that period lasts for only approximately 10-28 days - a period that is long over by the time the grass reaches the level of maturity shown in the commercial.  The coated seeds in Turf Builder would not provide any resistance to infrequent watering after the short germination period because, at that point, the tap root has grown away from the seed.  The side-by-side comparison in the commercial and the consumers' comments are false and misleading because they imply that the "Scotts" grass is thicker and greener than the "Pennington" grass due to the coating on the Scotts

seed, even though the coating has absolutely nothing to do with the supposed differences in the patches of mature grass depicted.

30. Defendants' false and misleading claims have been widely disseminated on television in the southern region of the United States, and have caused and continue to cause Pennington to suffer substantial irreparable harm and damage. In fact, in the first eight (8) days of its run, the Commercial was broadcast over one hundred and seventy (170) times in Georgia, North Carolina, Tennessee, and Virginia.

31. Furthermore, Defendants timed their false and misleading Commercial to coincide with the beginning of Spring, which is when most consumers buy grass seed, as this would maximize the unfair benefit they would obtain and cause the most damage to Pennington. In fact almost 50% of Pennington's annual grass seed sales occur between March and May with 22% occurring in April alone, which means that any disruption of Plaintiff's grass seed sales during this period due to Defendants' false and misleading claims will have catastrophic consequences on Plaintiff's annual sales of grass seed.

32. Defendants' false and misleading claims are likely to confuse and mislead consumers when they are making their purchasing decisions during the busiest grass seed purchasing period of the year which has and will have

disastrous effects of Pennington's sales and the goodwill associated with the Pennington name.   Consumers are likely to be misled by Defendants' false representations that: its grass seed is superior to Plaintiff's and produces greener and thicker grass; that Plaintiff does not offer a grass seed product with a resistance to infrequent watering; that if they buy Plaintiff's grass seed and do not water their lawns daily, they will experience grass seed failure and their laws will die; that the difference in color between the grass grown from the Scotts and Pennington products depicted is a result of the purported water-retaining qualities of the coating on the Scotts product; and that the coating in the advertised product provides a resistance to infrequent watering and drought-resistant benefit during the entire life of the grass.

33.   Scotts' false and misleading claims are in willful and wanton disregard of the interests of the consuming public, and constitute a knowing attempt by Scotts' to deceive consumers and misappropriate the customers of Pennington.

34.   Pennington has built valuable goodwill in its Pennington brand as a result of the quality of its products and its extensive advertising.   Defendants' false and misleading claims have caused and continue to cause Pennington to

suffer irreparable injury to its goodwill and reputation, for which Pennington has no adequate remedy at law.

35. Pennington has lost, and will continue to lose, sales as a direct result of the Defendants' false and misleading claims. In addition, Pennington has been forced to expend monies to counteract the negative effects of Defendants' false and misleading claims.

## COUNT I
### (Violation of the Lanham Act)

36. Pennington realleges and reavers the allegations of paragraphs 1 through 35 of this Complaint as if specifically set forth herein.

37. Defendants' false advertising claims, as described above, constitute false and misleading descriptions of fact and false and misleading representations of fact in interstate commercial advertising and promotion, which materially misrepresent that Defendants' grass seed is superior to Plaintiff's grass seed in color, thickness, and ability to withstand infrequent watering, that Plaintiff does not offer a grass seed product that can withstand infrequent watering, that Defendants' grass seed product has a water-retaining benefit during the entire life of the grass, that the difference between the grasses shown in the Commercial are due to the purported water-retaining benefit of Defendants' product rather than

differences in the quality and genetic make up of the grasses used, and that if consumers buy Plaintiff's grass seed and do not regularly water their laws, they will experience grass seed failure and dead lawns in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

38.   Defendants' false and misleading advertising claims, as described above, have deceived and will continue to deceive a substantial portion of the target audience for grass seed products.

39.   Defendants' false and misleading advertising claims, as described above, are material to consumers' purchasing decisions.

40.   Defendants' false and misleading descriptions of fact and false and misleading representations of fact are willful and intentional, with deceptive intent, making this an exceptional case.

41.   Defendants' false and misleading advertising claims have caused, and will continue to cause, great, immediate, and irreparable harm to Pennington's business reputation and injury to its goodwill, loss of competitive advantage, and pecuniary damages.

42.   Pennington has no adequate remedy at law.

## COUNT II
### (Violation of Georgia Uniform Deceptive Trade Practices Act)

43.    Pennington realleges and reavers the allegations of paragraphs 1 through 35 of this Complaint as if specifically set forth herein.

44.    Defendants' false advertising claims, as described above, constitute deceptive trade practices in that Scotts: (1) disparages Plaintiff's grass seed by making false and materially misleading representations of fact that Defendants' grass seed is superior to Plaintiff's grass seed in color, thickness, and ability to withstand infrequent watering, that Plaintiff does not offer a grass seed product that can withstand infrequent watering, that Defendant's grass seed product has a water-retaining benefit during the entire life of the grass, that the difference between the grasses shown in the Commercial are due to the purported water-retaining benefit of Defendant's product rather than differences in the quality and genetic make up of the grasses used, and that if consumers buy Plaintiff's grass seed and do not regularly water their laws, they will experience grass seed failure and dead lawns; (2) represents that Defendant's Turf Builder grass seed has water-retaining characteristics and benefits that it does not have; (3) represents that Scotts Turf Builder grass seed is of a particular standard, quality, or grade when it is of another (4) has otherwise engaged in conduct which creates a likelihood of confusion or misunderstanding about Defendant's grass seed and Plaintiff's grass

seed in violation of the Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. § 10-1-370 *et seq.* (including without limitation Ga. Code Ann. § 10-1-372).

45.　Defendants' false and misleading advertising claims, as described above, have deceived and will continue to deceive a substantial portion of the target audience for grass seed products.

46.　Defendants' false and misleading advertising claims, as described above, are material to consumers' purchasing decisions.

47.　Defendants' false and misleading descriptions of fact and false and misleading representations of fact are willful and intentional, with deceptive intent, making this an exceptional case.

48.　Defendants' false and misleading advertising claims have caused, and will continue to cause, great, immediate, and irreparable harm to Pennington's business reputation and injury to its goodwill, loss of competitive advantage, and pecuniary damages. Pennington has no adequate remedy at law.

49.　Pursuant to the Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. § 10-1-373, Pennington is entitled to its attorney's fees and injunctive relief based on Defendants' willful engagement in deceptive trade practices.

**COUNT III**

**(Violation of the Georgia False Advertising Law)**

50.    Pennington realleges and reavers the allegations of paragraphs 1 through 35 of this Complaint as if specifically set forth herein.

51.    Defendants' false advertising claims, as described above, constitute false and fraudulent statements disseminated or caused to be disseminated before the public in Georgia in television advertising which are untrue and fraudulent and which Defendants' know or which by exercise of reasonable care should be known to be untrue or fraudulent to Defendants, which materially misrepresent that Defendants' grass seed is superior to Plaintiff's grass seed in color, thickness, and ability to withstand infrequent watering, that Plaintiff does not offer a grass seed product that can withstand infrequent watering, that Defendant's grass seed product has a water-retaining benefit during the entire life of the grass, that the difference between the grasses shown in the Commercial are due to the purported water-retaining benefit of Defendant's product rather than differences in the quality and genetic make up of the grasses used, and that if consumers buy Plaintiff's grass seed and do not regularly water their laws, they will experience grass seed failure and dead lawns in violation of Georgia False Advertising Law, Ga. Code Ann. § 10-1-420 *et seq.*

52.    Defendants' false and misleading advertising claims, as described above, have deceived and will continue to deceive a substantial portion of the target audience for grass seed products.

53.    Defendants' false and misleading advertising claims, as described above, are material to consumers' purchasing decisions.

54.    Defendants' false and misleading descriptions of fact and false and misleading representations of fact are willful and intentional, with deceptive intent, making this an exceptional case.

55.    Defendants' false and misleading advertising claims have caused, and will continue to cause, great, immediate, and irreparable harm to Pennington's business reputation and injury to its goodwill, loss of competitive advantage, and pecuniary damages.

56.    Pennington has no adequate remedy at law.

57.    Pursuant to Georgia False Advertising Law, Ga. Code Ann. § 10-1-423, Pennington is entitled to injunctive relief based on Defendants' untrue and fraudulent statements.

## COUNT IV
## (Common Law Unfair Competition (Damages))

58.     Pennington realleges and reavers the allegations of paragraphs 1 through 35 of this Complaint as if specifically set forth herein.

59.     Defendants' false advertising claims, as described above, constitute unfair methods of competition and unfair and deceptive acts and practices, including but not limited to the use and employment of deception, fraud, false pretense, false promise, misrepresentation and the concealment, suppression and omission of material facts, with intent that others rely upon the concealment, suppression and omission of such material facts in violation of the Georgia common law of unfair competition.

60.     Defendants have made express and implied representations of fact in advertising for Turf Builder, in violation of the Georgia common law of unfair competition.    These acts constitute product disparagement and unfair competition in violation of the common law.

61.     Defendants' false and misleading descriptions of facts and false and misleading representations of fact are willful and intentional, with deceptive intent, making this an exceptional case.

62.    As a result of Defendants' acts, Pennington has suffered and will continue to suffer damage and irreparable injury, including but not limited to the loss of goodwill, loss of competitive advantage, and pecuniary damages.

63.    Pennington has no adequate remedy at law.

64.    Pennington is entitled to compensatory damages, punitive damages, and injunctive relief based on Defendants' violations of the Georgia common law of unfair competition.

## COUNT IV
### (Georgia Law – Attorney's Fees)

65.    Pennington realleges and reavers the allegations of paragraphs 1 through 35 of this Complaint as if specifically set forth herein.

66.    Defendants' actions stated herein have been taken in bad faith, and Defendants have caused Pennington unnecessary trouble and expense, such that Pennington is entitled to recover its attorney's fees pursuant to Ga. Code Ann. § 13-6-11.

## COUNT V
### (Punitive Damages)

67.    Pennington realleges and reavers the allegations of paragraphs 1 through 64 of this Complaint as if specifically set forth herein.

68.     Scotts' conduct as described herein constitutes willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

69.     As a result, Pennington is entitled to an award of punitive damages pursuant to Ga. Code Ann. § 51-12-5.1 because of Scotts' deceptive trade practices, unfair competition, libel, and tortious interference with business relations.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed.R.Civ.P. 38, Plaintiffs hereby demand trial by jury as to all issues so triable in this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Pennington respectfully requests that this Court enter judgment:

A.     Declaring that Defendants violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Georgia Uniform Deceptive Practices Act, Ga. Code Ann. § 10-1-370 *et seq*., Georgia False Advertising Law, Ga. Code Ann. § 10-1-420 *et seq*., and the Georgia common law of unfair competition.

B.     Preliminarily and permanently enjoining Defendants, their officers, subsidiaries, parents, divisions, agents, servants, employees and attorneys,

and those persons in active concert or participation with it from using, airing, disseminating or caused to be used, aired, disseminated any advertisements or packaging containing the false and misleading claims discussed above;

C.   Preliminarily and permanently enjoining Defendants, their officers, subsidiaries, parents, divisions, agents, servants, employees and attorneys, and those persons in active concert or participation with it from stating or conveying, explicitly or implicitly, or suggesting by verbal message, visual image or otherwise the false and misleading claims discussed above;

D.   Ordering Defendants to publish corrective advertising to dispel the false, deceptive or impliedly false impressions created by its advertising;

E.   Ordering Defendant to pay Pennington Defendants' profits, any damages sustained by Pennington, trebled, and costs of the action caused by Defendants' false descriptions, advertising and misrepresentations discussed above.

F.   Ordering Defendants to pay Pennington its damages, including punitive, compensatory and statutory damages, and up to three times as much by reason of Defendants' false and deceptive advertising and unfair competition;

G.   Ordering Defendants to pay Pennington's costs, disbursements, expenses and reasonable attorneys' fees and expert fees in this action;

H.   Granting Pennington such other and further relief

identified under 35 U.S.C. § § 1116, 1117, Ga. Code Ann. § 10-1-373, Ga. Code Ann. § 10-1-423, Ga. Code Ann. § 13-6-11 or Ga. Code Ann. § 51-12-5.1 that the Court deems reasonable; and

I.    Granting Pennington such other and further relief as this Court may deem just.

Respectfully submitted,

**PENNINGTON SEED, INC.**

By: _____

William H. Jordan (#405112)
Alston & Bird
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Phone: 404-881-7000
Fax: 404-881-7777

Stephen P. Durchslag
Kimball R. Anderson
Ronald Y. Rothstein
Marc H. Trachtenberg
Winston & Strawn
35 West Wacker Drive
Chicago, IL 60601
Phone: 312-558-5600
Fax: 312-558-5700